[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-10671
Non-Argument Calendar

_____

D.C. Docket No. 2:12-cv-01079-AKK

PROGRESSIVE EMU INC.,
f.k.a. Johnson UMU Inc.,

Plaintiff - Counter Defendant,

ANDERSON WEIDNER LLC,

Interested Party - Appellant,

versus

NUTRITION & FITNESS INC.,

Defendant - Counter Claimant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(August 13, 2019)

Before MARTIN, NEWSOM, and JULIE CARNES, Circuit Judges.

PER CURIAM:

This appeal arises from a breach-of-contract dispute between Plaintiff Progressive Emu Inc.,[1] a producer and supplier of emu oil, and Defendant Nutrition & Fitness Inc., a seller of commercial products containing emu oil. The case went to trial, leading to a judgment for Defendant.[2] Plaintiff's counsel, Anderson Weidner LLC, was sanctioned by the district court based on its improper issuance of a trial subpoena.

Specifically, on the eve of trial, Plaintiff served a subpoena on UPM Pharmaceuticals, Inc. ("UPM"), an entity that had purchased 100% of the stock of Defendant before the close of discovery. The district court considered the subpoena an end run around the discovery deadline, deemed the subpoena in violation of Federal Rule of Civil Procedure 45(d)(3)(A), sanctioned Plaintiff's counsel, Anderson Weidner, LLC, and ordered that Anderson Weidner pay Defendant's attorney's fees incurred in responding to the subpoena, which fees totaled $3,644.50.

---

[1] Plaintiff was formerly known as "Johnson's Emu Oil."

[2] Plaintiff appealed this judgment and we have, this same date, issued a separate opinion affirming that judgment. *See Progressive Emu Inc. v. Nutrition & Fitness Inc.,* No. 18-12804 (11th Cir. 2019).

Anderson Weidner now appeals this sanctions order.  After careful review, we affirm the district court's sanction award and award additional sanctions to Defendant under Federal Rule of Appellate Procedure 38 for Anderson Weidner's filing of this frivolous appeal.

## I.    BACKGROUND

In 2003, the parties entered into a Sales, Marketing and Operating Agreement (the Agreement).  The Agreement provides that Defendant would purchase emu oil from Plaintiff and pay Plaintiff a royalty on net revenue from sale of products containing emu oil.

After several years, the parties' contractual relationship broke down and Plaintiff filed suit.  The parties have been litigating this breach-of-contract case since March 2012.  Among other claims, Plaintiff has contended that Defendant made and sold more emu oil product from the oil it purchased from Plaintiff than it reported for royalty purposes, and therefore that Defendant owes Plaintiff royalties for these unreported, off-the-book sales.

Plaintiff based its claim for off-the-book sales on its approximations of how much product could potentially have been made from the amount of emu oil it sold Defendant.  The district court had originally granted summary judgment to Defendant on this claim after concluding that Plaintiff "put forward no evidence of concealed sales other than its conjectural, best-case-scenario mathematical

3

calculation." On appeal, we reversed, concluding that, when the evidence was taken in the light most favorable to Plaintiff, one could infer that a gallon of emu oil would yield more units of product than accounted for by Defendant. *Progressive Emu Inc. v. Nutrition & Fitness, Inc.*, No. 14-13485, 655 F. App'x 785, 793–94 (11th Cir. 2016).

On remand, the district court held a status conference on September 13, 2016. Although the conference was not transcribed, everyone appears to agree that Plaintiff indicated it might need additional documents relevant to its royalty claims.[3] Moreover, Anderson Weidner does not directly challenge Defendant's assertion in this present appeal that the district court instructed Plaintiff "to file a formal motion for additional discovery which set forth good cause for reopening the discovery process." In short, although the district court did not provide Plaintiff its requested relief during the status conference, it invited Plaintiff to follow-up its request in a more formal fashion in order to pursue the discovery it allegedly needed.

Plaintiff, however, never filed a motion to reopen discovery or compel additional discovery then, or at any other time before the scheduled trial date more

---

[3] A court reporter was not available for the status conference. We base our assessment of what transpired on the uncontested representations of the district court, the uncontested representations of Defendant, and Anderson Weidner's own admissions and arguments.

4

than a year later.[4]  Plaintiff's counsel later accepted responsibility for that failure: "This was my fault for not following up on the conversation that we had during that [status conference]."

Though having failed to pursue the matter during the preceding year, Plaintiff raised its need for additional royalty-related documents from Defendant in the pretrial conference held on August 29, 2017.  Again Plaintiff was expected to formally file something addressing its concerns.  Again, Plaintiff failed to file anything.

In fact, instead of filing a discovery motion during the two months following the pretrial conference, Plaintiff waited until Friday afternoon, October 27, 2017— the last business day before trial—to serve a trial subpoena on Defendant's parent company, UPM.  The trial subpoena, signed by Anderson Weidner attorney Deanna Weidner, commanded UPM to appear at trial the following business day at 9:00 am and to bring a long list of documents, identified in ten categories and eleven subcategories, that spanned a decade beginning in January 1, 2006.  Among other things, Plaintiff demanded "any and all documents" that "refer to, relate to,

---

[4]  In its opening brief on appeal, Anderson Weidner admits that it informed the court during the status conference that it planned to file a renewed motion to compel.  Anderson Weidner maintains that its plan was to wait until the court ruled on pending motions for summary judgment.  We fail to understand why Plaintiff would delay such a filing if it felt its summary judgment positions were meritorious, and as Plaintiff was aware that it lacked documents that would be needed at trial.  Regardless, the district court' summary judgment order came on August 9, 2017.  Plaintiff's renewed motion to compel never arrived.

or evidence" the following:  emu oil product sales, discounts, refunds, rebates, royalties or potential royalties; minutes from board, committee, division, department, section, office, or other meetings; emu oil orders, receipt, cost, price, and delivery from any source; Defendant's inventory of oil during all relevant times; shipment of oil by Defendant to any person, firm, or other entity for any purpose; the number of units of emu oil products produced, producible and/or sold using Plaintiff's oil or oil from any other source; the amount of oil used for promotional products; defective products, product returns and "unsaleable" products; the chain of custody of all emu oil used to make any and all products regardless of source; Defendant's inventory tracking system and inventory reports; General Ledgers related to inventory of oil and emu oil products; and customer sales reports.  Plaintiff also demanded that UPM bring all documents Plaintiff previously requested of Defendant that were not previously produced constituting the business records necessary to calculate royalties due Plaintiff.

On Sunday, October 29, 2017, Defendant moved to quash the subpoena on each of the four grounds identified in Federal Rule of Civil Procedure 45(d)(3)(A). Defendant maintained that the subpoena:  (1) failed to allow a reasonable time to comply; (2) improperly required a UPM representative to appear and produce documents in excess of the 100-mile limitation of Fed. R. Civ. P. 45(c)(1)(A); (3) improperly required production of privileged material that Defendant did not

6

have time to review and withhold; and (4) subjected UPM to undue burden given the substantial number of documents demanded.  The motion also requested that the district court sanction Plaintiff for serving an "impossibly burdensome subpoena" and award Defendant its reasonable fees in moving to quash the subpoena.

At a hearing on October 30, 2017, the scheduled first day of trial,[5] the district court granted Defendant's motion to quash because it was "inappropriate on multiple levels."  The district court explained:  "[W]ith respect to the motion to quash, again, the period for discovery in this case is over.  No party has a right to seek an end around the court's deadlines by subpoenaing documents from a third party especially here on the eve of trial."  In addition to not being timely, the district court found the subpoena inappropriate because it required performance by someone outside the 100-mile zone.  The district court also questioned why Plaintiff's actions on the eve of trial should not be deemed a "quintessential example of the directive that a lawyer should not serve a subpoena that would impose undue burden or expense on the person subject to the subpoena," especially when it provided a non-litigant only two or three days to comply.

---

[5]  Following a death in Plaintiff's counsel's family just before trial, the district court granted an emergency motion to continue the trial.  Trial began on January 8, 2018.

Plaintiff argued that there was no undue expense or burden because Defendant and UPM "are the same person." With respect to the document subpoena, Plaintiff maintained that it merely demanded easily printed Quickbooks financial reports: "This is not a reopening discovery. It is pushing a button on a computer to print out a report. It is one report."

The district court rejected that argument, noting the demand for "10 numbered requests of documents with request number 6 having multiple subparts." The court deemed sanctions in the form of reasonable attorney's fees warranted under Federal Rule of Civil Procedure 45(d)(1) and taxed those fees against Plaintiff's counsel, Anderson Weidner. At the court's request, Defendant submitted a fee application on November 6, 2017, requesting a sanction award of $3,644.50 for fees incurred in responding to Plaintiff's improper subpoena. Plaintiff did not file a response to the fee submission.

On December 28, 2017, Plaintiff filed a motion for reconsideration of the court's sanction ruling made 59 days earlier. Plaintiff raised many of the same arguments it now asserts on appeal. Plaintiff also asserted for the first time that the fees requested in Defendant's fee submission, made 52 days earlier, were excessive.

On the first day of trial, the district court denied Plaintiff's motion for reconsideration of the sanctions from the bench because "it's procedurally

8

improper under Rule 59, and then it fails to meet the stringent standard under Rule 60." The court also cited its original justifications for imposing sanctions as a basis for denying Plaintiff's motion for reconsideration. Following trial, the district court entered an order finding that "the [fee] amount requested is a reasonable and appropriate fee for the time spent preparing and filing the Defendant's motion to quash" and ordering Anderson Weidner to pay the full amount of $3,644.50.

Anderson Weidner now appeals, arguing it issued the subpoena in good faith, that sanctions were imposed without adequate notice and an opportunity to be heard, and that the sanction amount was excessive. Defendant argues that the appeal is frivolous, and it has moved for sanctions under Federal Rule of Appellate Procedure 38.

## II.    STANDARD OF REVIEW

The parties agree that an abuse of discretion standard applies when determining the propriety of sanctions imposed under Rule 45. We have previously applied an abuse of discretion standard when evaluating discovery sanctions under Rule 37. *Serra Chevrolet, Inc. v. Gen. Motors Corp.*, 446 F.3d 1137, 1146–47 (11th Cir. 2006). And other circuits have applied an abuse of discretion standard when addressing sanctions under Rule 45(d)(1). *See Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013); *In re: Modern*

*Plastics Corp.*, 890 F.3d 244, 250 (6th Cir. 2018).  Accordingly, we apply here an abuse of discretion standard in assessing the propriety of the sanction imposed under Rule 45(d)(1).  We review *de novo* the argument that the sanctions imposed by the district court violated due process.  *Serra Chevrolet,* 446 F.3d at 1147.

## III.   DISCUSSION

Anderson Weidner makes three principal arguments on appeal:  (1) the district court abused its discretion in imposing sanctions under Rule 45(d)(1) for the trial subpoena issued by Plaintiff; (2) the district court deprived Anderson Weidner of due process; and (3) the $3,644.50 sanction was excessive.  We address each in turn.

### A.    The District Court Did Not Abuse Its Discretion in Sanctioning Anderson Weidner

#### 1.    The District Court Did Not Abuse Its Discretion in Deeming Plaintiff's Trial Subpoena Improper

After a careful review of the record and the arguments on appeal, we conclude that it was not an abuse of discretion for the district court to quash the subpoena and award attorney's fees as a sanction.  Plaintiff had adequate opportunity to discover the demanded documents through the normal discovery process.  Plaintiff also had adequate opportunity during the remand period to file a motion seeking the documents it allegedly needed, but failed to accept the district court's invitation to do just that.  Having failed to do either, and on the eve of trial, Plaintiff used a subpoena in an effort to improperly reopen discovery.  *Ghandi v.*

*Police Dep't of City of Detroit*, 747 F.2d 338, 354 (6th Cir. 1984) (no abuse of discretion to deny pre-trial subpoena where plaintiffs were given ample opportunity to complete discovery before trial).

Compounding the problem, the subpoena clearly failed to comply with Rule 45. The subpoena, which demanded compliance in less than one business day, failed to allow a reasonable time to respond.[6] The subpoena also improperly required compliance from an entity beyond the 100-mile geographical limit of Rule 45(c). Finally, the subpoena was grossly overbroad and unduly burdensome, requiring the production of "any and all documents" that "refer to, relate to, or evidence" 10 categories of documents over a ten-year period.[7]

Anderson Weidner's contention that it issued a legitimate trial subpoena is unpersuasive. Its arguments do not account for the enormous breadth of the demanded documents,[8] Plaintiff's failure to subpoena the demanded documents

---

[6] We are not persuaded by Anderson Weidner's argument that the subpoena should not have been quashed for timeliness because "a previous demand had been served" that mitigated the lateness of the subpoena. While some of the demanded documents overlapped with previous discovery requested of Defendant, Plaintiff had not previously served UPM with a subpoena or otherwise sought discovery from UPM. Moreover, Plaintiff's failure to file a renewed motion to compel or a motion to reopen discovery signaled Plaintiff's satisfaction with the discovery it received.

[7] Given the breadth of the demanded documents, the subpoena also likely called for production of privileged documents, though the record is not clear what privileged documents might be implicated.

[8] Notably, the subpoena is not limited to obtaining original documents for trial or even to obtaining documents generated after discovery closed, such as records relevant to determining potential royalties owed through the December 2015 termination date in the Agreement. To the contrary, the subpoena seeks "any and all documents" and defines the Relevant Time Period as

from UPM during the normal discovery period,[9] or the last-minute issuance of the subpoena.

We also reject Anderson Weidner's assertion that, because it required Plaintiff to be prepared to make an offer of proof on the royalties it claims it is due for the full term of the Agreement, including those after April 27, 2012, the district court's October 16, 2017 ruling on the parties' motions for reconsideration made necessary the royalty-related discovery and justified Plaintiff's trial subpoena. That order did not introduce a new issue. The issue of royalties for the full term of the Agreement was the subject of discovery, and an issue in the case, up until the court's summary judgment ruling on August 9, 2017. Even if the October 16, 2017 order reinforced the significance of documents concerning the appropriate royalty payments between April 2012 and December 2015, the trial subpoena seeks documents from a third party and demands documents going all the way back to January 1, 2006.[10] Moreover, the proper vehicle for seeking the allegedly missing

---

beginning January 1, 2006. Even if Plaintiff had a legitimate need to issue a trial subpoena for some documents covered by its subpoena, that does not negate the overly broad and unduly burdensome nature of the subpoena. Rule 45 requires a party or attorney issuing a subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1).

[9] Even if some of the documents listed on the subpoena were the subject of prior discovery requests and not previously produced by Defendant, the proper vehicle to obtain such documents is a motion to compel production.

[10] Anderson Weidner maintains that Defendant's failure to move the court for a show cause order or consult with them to narrow Plaintiff's subpoena before filing its motion to quash "alone precludes the district court's grant of attorneys' fees." But Federal Rule of Civil Procedure 45

12

documents was a motion, such as the renewed motion to compel Anderson Weidner admits it twice informed the court it planned to file, but never did.

In short, we see no justification in the record for the overly broad third-party trial subpoena Anderson Weidner issued on the eve of trial seeking documents it failed to diligently pursue during discovery or during the 13-month period following remand. Because the subpoena violated Rule 45 and circumvented the discovery process, we conclude that the district court did not abuse its discretion in quashing Plaintiff's trial subpoena.

We further conclude that Anderson Weidner's actions were sufficiently egregious to warrant the attorney's fee sanction imposed by the district court. The breadth and timing of Plaintiff's subpoena reflects Deanna Weidner's complete disregard for her duty, as the issuer of the subpoena, to avoid subjecting UPM to undue burden and expense.[11] Fed. R. Civ. P. 45(d)(1). The district court properly

---

imposes no such obligation. Instead, it requires those serving a subpoena to take reasonable steps to avoid imposing undue burden and expense on the recipient of the subpoena and authorizes sanctions on a party or attorney who fails to comply. Fed. R. Civ. P. 45(d)(1). Rule 45 leaves no room for a party or attorney to issue an untimely, facially overbroad and unduly burdensome subpoena and expect to work out the details later, especially when the subpoena requires compliance in less than one business day, as was the case here. The cases cited by Anderson Weidner are inapplicable. They involve discovery under Federal Rule of Civil Procedure 37, which expressly requires an attempt to confer in good faith before filing a motion to compel, or a failure to comply with local rules that impose a duty to confer.

[11] We reject Anderson Weidner's misleading assertion that the subpoena was not unduly burdensome because Plaintiff merely requested Defendant's "business records of sales, discounts and rebates that [Defendant] maintained in <u>electronic form</u> in the ordinary course of its business and that [Defendant] can produce with a few pushes of a button." The subpoena: (1) requires production from UPM and its affiliates, not just Defendant; (2) extends to printed and

enforced this duty by requiring Weidner to reimburse Defendant for the attorney's fees it was unnecessarily forced to incur.

### 2. Defendant Had Standing to Enforce the Court's Scheduling Orders through a Motion to Quash

Anderson Weidner also argues that Defendant did not have standing to move to quash the subpoena because Defendant had no obligation to produce any information subject to the subpoena and thus had no basis to claim undue burden. We disagree.

The subpoena threatened Defendant's interests in at least two ways. First, because Plaintiff defined UPM in its subpoena as including any affiliates with possession, custody, or control of the demanded documents and because UPM owned 100% of Defendant, the subpoena sought Defendant's records.[12] Indeed, Anderson Weidner maintains that, for purposes of the subpoena, Defendant and UPM "are the same person" and that a subpoena on UPM was justified because UPM had control over documents in Defendant's physical possession. Second, Defendant had a legitimate interest in enforcing the court's scheduling order and avoiding prejudice that would result from Plaintiff's circumvention of the

---

typewritten "Documents" and oral and written "Communications," not just records in electronic form; and demands production of anything that refers or relates to the demanded categories of documents, not just the records themselves.

[12] Proving the point, Anderson Weidner argues that the subpoena was timely and not unduly burdensome because "the records subpoenaed were previously requested [from Defendant] and supplementation has consistently been requested."

discovery deadline. *United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982) ("A party has standing to move to quash a subpoena addressed to another if the subpoena infringes upon the movant's legitimate interests."). Accordingly, we find that Defendant had standing to quash Plaintiff's subpoena under Rule 45.[13] *See*, *id.* (finding prosecution had standing to contest subpoena because of its interest in preventing undue lengthening of the trial).

## B. The District Court Did Not Deprive Anderson Weidner of Due Process

We have previously affirmed sanctions against Deanna Weidner over her non-meritorious due process argument, and we do so again here. *See Yaffa v. Weidner*, 717 F. App'x 878, 886 (11th Cir. 2017) (affirming $5000 fine for failure to comply with court orders and deadlines). As in *Yaffa*, Anderson Weidner argues

---

[13] The trial subpoena issued by Anderson Weidner not only violates Rule 45, it reflects a bad faith attempt to subvert court-imposed discovery deadlines. The court repeatedly declined Plaintiff's oral requests for additional discovery and invited Plaintiff to file a motion demonstrating good cause to reopen discovery. Plaintiff never did. Moreover, the depth, breadth, and timing of Plaintiff's subpoena belies the notion that it is merely a trial subpoena. Indeed, much of Plaintiff's briefing below and on appeal reads like a motion to compel, reflecting the true nature of the subpoena as a vehicle for untimely discovery. Anderson Weidner even acknowledges that "[t]o be sure, [Plaintiff] could have obtained documents from UPM during discovery" because UPM purchased Defendant before the close of discovery. As such, the court would also have been justified to find that Plaintiff acted in bad faith to circumvent the discovery deadline and use its inherent power to impose sanctions and award fees for counsel's litigation abuses. *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1225 (11th Cir. 2017) ("The purpose of the inherent power is both to vindicate judicial authority without resorting to contempt of court sanctions and to make the non-violating party whole."); *Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010) ("[T]the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct, for these rules are not substitutes for the inherent power.") (quotation marks omitted).

that it was not given adequate notice and an opportunity to be heard.  Yet, Rule 45 puts attorneys on notice that district court's "must enforce" the duty to take reasonable steps to avoid undue burden and expense and "impose an appropriate sanction" when that duty is violated.  Fed. R. Civ. P. 45(d)(1).  Moreover, Defendant's motion to quash put Anderson Weidner on notice that it was seeking sanctions, and Anderson Weidner had a full and fair opportunity to respond to that motion during the October 30, 2017 hearing.  Anderson Weidner cites no authority supporting the notion that the notice and opportunity to be heard it was given were insufficient.  Accordingly, we reject its due process argument.[14]

### C.    The District Court Did Not Abuse Its Discretion in Imposing a Sanction of $3,644.50

Anderson Weidner challenges the fee award as excessive, asserting that the hourly rates for the attorneys who responded to Plaintiff's improper subpoena, and the hours spent, are unreasonably high.  We find these arguments unpersuasive.

Anderson Weidner failed to submit a timely objection to Defendant's fee submission, and the arguments made in its motion for reconsideration, filed 52 days after that submission, lack the specificity necessary to imply an abuse of

---

[14] We also find that the district court did not abuse its discretion in denying Anderson Weidner's motion for reconsideration, which raised the same arguments we now reject on appeal, and which was filed 59 days after the court sanctioned Anderson Weidner and 52 days after Defendant's fee submission, which Plaintiff did not oppose. *Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1121 (11th Cir. 2004) (denial of motion for reconsideration is reviewed for abuse of discretion).

discretion by the district court in awarding $3,644.50 as a sanction for Plaintiff's improper subpoena. For instance, Anderson Weidner vaguely argues that the rates charged are higher than the rates for its attorneys, but then leaves us in the dark as to what those rates are. It also asserts that the hours listed in the fee submission include hours for activities other than responding to the improper subpoena. However, Defendant's fee submission makes clear that the reported hours were incurred in responding to the subpoena and that other hours were excluded. Further, Defendant excluded local counsel fees to avoid duplicative charges and reduce the fee award. Finally, we have independently reviewed the fee submission and see no evidence that the reported hours and charged fees are unreasonable given the circumstances. Accordingly, we affirm the fee award.

### D.    Motion for Sanctions

Defendant has requested that we also impose sanctions against Anderson Weidner under Federal Rule of Appellate Procedure 38 for pursuing a frivolous appeal. Rule 38 provides that, "[i]f a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee."

For the reasons explained above, we consider Anderson Weidner's arguments on appeal frivolous, constituting nothing but weak, post-hoc

17

rationalizations for a facially overbroad "trial subpoena" it issued in a transparent attempt to rectify its failure to diligently pursue and obtain necessary documents during discovery proceedings or via a motion during the lengthy post-remand period before trial. Because Anderson Weidner's challenge to the district court's sanction is entirely without merit,[15] we award to Defendant costs and reasonable attorney's fees incurred because of this appeal. We remand this action to the district court with instructions to determine the amount of attorney's fees reasonably incurred by Defendant and to assess that amount against Anderson Weidner.

## IV.    CONCLUSION

For the reasons explained above, we **AFFIRM** the decision of the district court sanctioning Anderson Weidner, we **AWARD SANCTIONS** to Defendant under Federal Rule of Appellate Procedure 38, and we **REMAND** with instructions to determine a reasonable fee for the defense of this appeal.

---

[15] We note that this is not the first time we have considered the imposition of sanctions on Anderson Weidner based on its conduct in litigating a matter on appeal. *See Cadlerock III, LLC v. Harry Brown & Co., LLC*, 754 F. App'x 780, 783 (11th Cir. 2018). "[A]lthough there is arguable support for a finding of bad faith," we ultimately declined to impose sanctions in *Cadlerock*, finding it "more likely that Anderson Weidner's wholly deficient briefing resulted from sloppiness, negligence, and poor judgment." Case No. 17-13328 January 10, 2019, Order. Nevertheless, we noted that "[w]e expect Deanna Weidner, David Anderson, and the law firm Anderson Weidner to take their responsibilities more seriously in the future." We acknowledge, however, that this warning came after the briefs in this case had been filed.